UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                          :
PATRICIA GRANA,                           :
                                          :
                 Plaintiff,               :        **MEMORANDUM & ORDER**
                                          :        06-CV-1173 (JFB)(ARL)
               – against –                :        07-CV-0476
                                          :
JOHN E. POTTER, POSTMASTER GENERAL,       :
                                          :
                 Defendant.               :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOSEPH F. BIANCO, District Judge:

Plaintiff Patricia Grana ("plaintiff" or "Grana") brought the above-captioned consolidated

actions against her employer, defendant John E. Potter, Postmaster General ("defendant"), alleging

employment discrimination on the basis of plaintiff's disability pursuant to the Rehabilitation Act

of 1973, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act").[1]  Specifically, plaintiff alleges that

defendant: (1) took adverse action against her because of her allegedly disabled knee;[2] (2) failed to

reasonably accommodate her disability; (3) retaliated against her for requesting a reasonable

accommodation and filing several Equal Employment Opportunity Commission ("EEOC")

complaints against defendant; and (4) enforced policies which had a disparate impact upon her

---

[1]  The standard for evaluating a claim under the Rehabilitation Act is the same as that applied to claims under
the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq* (the "ADA").  29 U.S.C. § 791(g) ("The
standards used to determine whether this section has been violated in a complaint alleging nonaffirmative
action employment discrimination under this section shall be the standards applied under title I of the
Americans with Disabilities Act of 1990.").

[2]  For the purposes of the instant motion, defendant does not dispute that plaintiff is a disabled individual as
defined by the Rehabilitation Act.  (Defendant's Memorandum of Law ("Def.'s Memorandum"), at 7.)

1

because of her disability.[3]  Plaintiff seeks (1) an order permanently enjoining defendants from violating the Rehabilitation Act; (2) a declaratory judgment specifying both defendant's violations of the Rehabilitation Act as well as plaintiff's same rights under that statute; (3) compensatory damages; (4) equitable relief including, but not limited to, backpay; and (5) an award of damages in an amount of $300,000, including, but not limited to, prejudgment interest, past wages, compensation for mental and emotional distress and attorney's fees.

Defendant now moves for summary judgment on all of plaintiff's claims.  For the reasons set forth below, after carefully reviewing the record in this case, the Court finds that genuine issues of material fact preclude summary judgment on the following Rehabilitation Act claims related to plaintiff's right-knee disability: (1) a claim of disability discrimination based upon the alleged deprivation of overtime opportunities up to January 2006, arising from an alleged overtime policy that discriminated against her based on disability; (2) a claim of failure to provide a reasonable accommodation in January and February 2004 in connection with hours plaintiff was directed to work as a window clerk, allegedly beyond her medical limitations; (3) a claim of retaliation following her protected activity in January 2004, with such retaliation allegedly including being

---

[3]  Plaintiff's First Complaint ("First Compl.") included claims of hostile work environment and negligent training and supervision and her Second Complaint ("Second Compl.") included claims of hostile work environment and gender discrimination.  In the opposition papers and at oral argument, counsel for plaintiff stated that these claims were withdrawn.  (*See* Plaintiff's Memorandum of Law ("Pl.'s Memorandum"), at 1.)  In fact, Ms. Grana herself confirmed that in her affidavit in opposition to the motion.  (*See* Grana Aff. ¶¶ 2-3 ("In regard to the first complaint, 06cv1173, Plaintiff withdraws her claim for hostile work environment and negligent training and supervision.  In regards to the second complaint, 07cv0476, Plaintiff withdraw [sic] her claims for hostile work environment.").)  However, in a letter to the Court following oral argument, counsel for plaintiff sought to reinstate the hostile work environment claim, without providing any reason for such request or any briefing with respect to that issue.  Although plaintiff has failed to provide any reason why the hostile work environment claim should not continue to be deemed abandoned and withdrawn, the Court, in an abundance of caution, has considered the merits of plaintiff's hostile work environment claim and, for the reasons discussed *infra*, concludes that, in addition to being abandoned, such claim cannot survive summary judgment on the merits.

ordered to work beyond her medical restrictions in early 2004, the denial of training in May 2004, the denial of overtime, the denial of preferable work assignments, and increased scrutiny; and (4) a claim of disparate impact based on defendant's alleged discriminatory overtime policy. Defendant's motion for summary judgment is granted with respect to all other claims.

## I. PROCEDURAL HISTORY

On March 15, 2006, plaintiff filed her first complaint in the consolidated action. Defendant answered the first complaint on June 14, 2006. On February 2, 2007, plaintiff filed a second complaint, which defendant answered on May 7, 2007. On February 8, 2007, the Court consolidated the actions. Defendant moved for summary judgment on November 9, 2007. Plaintiff filed her opposition on August 7, 2008. Defendant replied on October 8, 2008. Oral argument was held on November 24, 2008. Plaintiff submitted a letter to the Court providing additional documentation on December 5, 2008. Defendant responded on December 15, 2008. This matter is fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to

eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48.  Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005).  Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

In addition, the Second Circuit has provided specific guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because

direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. DISCUSSION[4]

A. Timeliness of Claims

As a threshold matter, defendant argues that, because plaintiff did not first contact an EEOC counselor regarding alleged acts of discrimination until January 26, 2004, any claims of discrimination which occurred prior to December 11, 2003, forty-five days before she contacted the EEOC, are time-barred and should be dismissed. Thus, defendant asserts, plaintiff's pre-December 11, 2003 claims – including (1) on April 15, 2000 and generally from 1996 through 2003, co-workers taunted plaintiff about her disability without reprimand (Def.'s 56.1 ¶ 21); (2) on April 23, 2002, Postmaster Garafalo sent plaintiff home for wearing improper shoes but did not so order two fellow employees also wearing inappropriate attire (*id.* ¶ 25); (3) in September and October of 2002, co-workers harassed her without reprimand (First Compl. ¶¶ 31-32); (4) on June 26, 2002,

---

[4] A summary of the allegations and facts relevant to each claim is set forth below in the discussion of that particular claim. The Court has taken the facts described below from the plaintiff's two complaints, the parties' depositions, affidavits, and exhibits, defendant's Local Rule 56.1 statement of facts ("Def.'s 56.1") and plaintiff's Local Rule 56.1 statement of facts ("Pl.'s 56.1"). In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001). Where only defendant's 56.1 Statement is cited, the facts are taken from defendant's 56.1 statement, and plaintiff does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

Postmaster Garofolo prevented plaintiff from using crutches in the workplace, citing safety concerns, but permitted another employee to use his crutches (Grana Aff. ¶ 11); (5) on March 12, 2003, her personal items went missing (First Compl. ¶ 32); (6) in June of 2003, Postmaster Garafolo refused to provide her with a copy of her pay record, stating that she was not entitled to it (Def.'s 56.1 ¶ 26); (7) on September 2, 2003, Postmaster Garafolo and supervisor Tumminello required plaintiff to see a Post Office physician to obtain "certification for duty" after an absence of twenty-one consecutive days, but did not impose the same requirement on co-workers with similarly lengthy health-related absences (*id*. ¶ 27); (8) in October of 2003, Postmaster Garafolo ordered plaintiff to come to the Post Office on a non-working day to unlock her drawer, but did not order other employees with locked drawers to do the same (*id*. ¶ 28); and (9) on May 17, 2002,[5] she requested finance training but never received it – should be dismissed as time-barred. Defendant argues that plaintiff's claim that she was the victim of a discriminatory overtime policy is also time-barred, because that policy was changed in October or November of 2004, and she failed to lodge a complaint about it until February 22, 2006.[6] (Greb Dep. at 20; Def.'s Memorandum, at 20.)

As set forth below, with the exception of the alleged denial of training in May 2004 and the alleged denial of overtime in 2006, the other above-referenced incidents are time-barred.

---

[5] Plaintiff states in her first EEOC complaint that she lodged this training request on May 17, 2002. (Def.'s Ex. F, ¶ 3.) However, she asserts in her memorandum of law opposing defendant's instant motion that the request was made on May 17, 2004, (Pl.'s Memorandum, at 20), and cites to her supporting affidavit to substantiate that claim. (*See* Grana Aff. ¶ 11, Ex. 2; *id*. ¶ 29, Ex. 10.) However, the only evidence contained therein dispositive of whether the request was lodged in 2002 or 2004 is an undated form requesting finance training submitted by plaintiff bearing a time stamp wherein the year date is obscured. In any event, plaintiff's affidavit, which alleges a denial of training in May 2004, is sufficient to create material issues of fact regarding the timeliness of any denials of training such that summary judgment on that issue is unwarranted.

[6] Plaintiff asserts via affidavit filed in support of her opposition to the instant motion that defendant actually ended the policy on January 11, 2006 (not in 2004) and cites to handwritten notes that she asserts that she took on that day to memorialize the event as proof of the date. (Grana Aff. ¶ 33, Ex. 13.)

## 1. Legal Standard

It is well-settled that a plaintiff who alleges discrimination and retaliation under the Rehabilitation Act or Title VII must exhaust administrative remedies within a specified time frame before commencing an action in federal court. *See Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir. 1996) (failure to bring a Title VII claim within the mandated time period "ordinarily . . . preclude[s] a plaintiff from pursuing a discrimination claim in federal court"); *Jordan v. Potter*, No. 05 Civ. 3005 (SJF) (ETB), 2007 WL 952070, at *4 (E.D.N.Y. Mar. 29, 2007) ("A federal employee seeking relief for disability discrimination under the Rehabilitation Act must follow the procedures set forth under Title VII . . . [and t]hus, a federal employee must exhaust certain administrative remedies . . . .") (citation omitted). Before a federal employee may commence a discrimination action in federal court, EEOC regulations require that the individual first consult with an EEOC counselor within forty-five days of the allegedly discriminatory event, *see* 29 C.F.R. § 1614.105(a)(1), and then file a formal complaint within fifteen days of receiving notice that the counselor has failed to resolve the claim. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a). The employee may then only commence a federal action once the EEOC has conducted an investigation and issued a "right to sue" letter. *See* 29 C.F.R. § 1614.407. This "45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). Further, the Supreme Court has determined that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *AMTRAK v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

## 2. Application

It is undisputed that plaintiff first contacted an EEOC counselor regarding alleged acts of discrimination based upon disability on January 26, 2004. Thus, any claims arising from events that occurred prior to December 11, 2003 are time-barred under the relevant statute. Accordingly, the Court finds that all of the aforementioned incidents, with the exception of the denial of the finance training request and the alleged discriminatory overtime policy, are time-barred. As set forth below, because the parties dispute when the denial of training and overtime policy events actually took place, summary judgment on those claims on timeliness grounds is unwarranted.

With respect to the overtime policy, the defendant contends that the allegedly discriminatory overtime policy ended in 2004 and, because plaintiff did not contact an EEOC counselor within forty-five days after being subjected to the allegedly discriminatory overtime policy (but rather waited to complain about the policy until February 22, 2006), her claim regarding the discriminatory overtime policy is time-barred for failure to timely exhaust administrative remedies. Plaintiff, however, disputes that the policy ended in 2004; rather, she asserts that the policy continued into January 2006. Specifically, in her affidavit, plaintiff states the following: "On January 11, 2006, Ms. Grana, along with her shop steward, Crystal Sullivan, requested a meeting with Postmaster Greb to complain about a similarly situated male employee named Gilbert Robles, who is treated more favorably, and the unlawful overtime policy-employees on light-duty are chosen last for overtime. Ms. Grana initiated contact with the EEOC to assert this claim on February 22, 2006." (Grana Aff. ¶ 33.) In response to this affidavit, defendant points out that, at her deposition, plaintiff suggested that this meeting with Postmaster Greb occurred in 2004. (*See* Grana. Dep. at 92.) Thus, defendant contends that the affidavit, which contradicts Grana's deposition testimony (as well as some other evidence in the record), should be disregarded on the motion for summary judgment. *See Hale v. Mann*, 219 F.3d 61, 74 (2d Cir. 2000) ("it is well settled in this circuit that a party's affidavit which

contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment") (internal citation and quotation omitted). However, under the particular circumstances of this case, the Court disagrees. First, although plaintiff did initially refer to 2004 in her deposition in describing that meeting, she did state later in the deposition that she could not recall the date she spoke to Ms. Sullivan about this issue. (*See* Grana Dep. at 100 ("Q. You can explain but let me know when you had this discussion [with Crystal Sullivan], when did she tell you that? A. I don't remember. This whole thing was so messed up you have no idea. It was so messed up . . . ."); Grana Dep. at 101 ("Q. Can you tell me when you had this discussion [with Crystal]? A. I don't remember. I spoke to her on a couple of occasions about it. I would go over and complain to her and say look at his.").) Second, it appears that plaintiff's recollection of the date of this conversation was refreshed subsequent to the deposition based upon handwritten notes that she asserts that she took after the meeting on January 11, 2006, which are attached to her affidavit.[7] Third, plaintiff points to deposition testimony by her supervisor, Kathryn DelPrete, that Grana was placed at the bottom of the overtime list, at the union's request, from September 2003 to January 2006:

> Q.     From June 2003 up until January 2006, was Ms. Grana placed on the bottom
>
>         of the overtime desired list?
>
> A.     At the union's request.

(DelPrete Dep. at 95-96.) Defendant notes that, at other points in the deposition, DelPrete testified she did not handle overtime and, thus, may not have been focusing on the dates contained in the

---

[7]  Defendant argues that such notes cannot be considered because they are inadmissible hearsay. As a threshold matter, it is possible that such notes may be admissible under Rule 801 of the Federal Rules of Evidence if the defendant claims recent fabrication or improper influence or motive. *See* Fed. R. Evid. 801(d)(1). In any event, even without these notes, there is a sufficient factual dispute regarding the date such alleged policy ended that, notwithstanding the initial statement in Grana's deposition, summary judgment on this issue is unwarranted.

above-referenced question. (Defendant's Reply Memorandum of Law, at 14-15.) However, the Court concludes that, notwithstanding the reference to 2004 in plaintiff's deposition and the other evidence submitted by defendant suggesting that the policy ended in 2004, there is sufficient evidence in the record to create a genuine issue of material fact on this issue that cannot be decided on summary judgment. Accordingly, the claim related to overtime policy cannot be precluded at the summary judgment stage on timeliness grounds. Similarly, plaintiff has proffered evidence that she was denied training in May 2004. Therefore, the motion of summary judgment on timeliness grounds as to the denial of training is also denied.[8]

### B. Disability Discrimination Claim

Plaintiff asserts that defendant violated the Rehabilitation Act when defendant supervisors implemented a discriminatory overtime policy.[9] The following facts related to this issue are undisputed: The national labor agreement between the United States Postal Service and the American Postal Workers' Union governs the procedure by which overtime hours are assigned. (Def.'s 56.1 ¶ 42.) Employees indicate their desire to work overtime hours by signing a list at the

---

[8] Defendant also argues that, even apart from timeliness issues, summary judgment must be granted regarding any denial of training in 2004 for failure to exhaust administrative remedies because plaintiff purportedly made no mention of any denial of training in her EEOC complaints at issue in this case and did not contact an EEOC counselor regarding lack of training. Following oral argument, plaintiff's counsel submitted additional documentation demonstrating that her May 14, 2004 EEOC complaint was subsequently amended to include her complaint that she was not offered training on May 21, 2004. Therefore, as to that date, defendant withdrew its contention that plaintiff did not exhaust, but continued to assert that dismissal for failure to exhaust as to the other alleged denials of training in May 2004 is still warranted. However, any other denials of training in May 2004 for the same type of skills sought in the May 21, 2004 request are "reasonably related" to the denial of training for May 21, 2004 and, thus, survive summary judgment. *See Deravin* v. *Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001); *Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993).

[9] Plaintiff also alleges that defendant violated the Act when defendant supervisors failed to appropriately discipline co-workers who mocked her disability, a claim which the Court has dismissed as time-barred for reasons stated *supra*.

start of each calendar quarter. (*Id*.) The Lindenhurst facility has two overtime lists, one where employees can sign up to work hours on days they otherwise are not scheduled to work and another where employees can volunteer for hours on scheduled work days. (*Id*. at ¶ 43.) By agreement dated January 16, 2003, Postmaster Garofalo and the union agreed that the overtime list would be updated and run by the union. Pursuant to this agreement, a supervisor would inform the Lindenhurst facility union shop steward the amount of overtime required and the type of task to be accomplished therein and the steward would then determine which employee would work that overtime based on the list. (Def.'s 56.1 ¶ 44.)[10] Soon after this agreement went into effect, the union steward began placing "light duty" employees at the bottom of the rotation for overtime hours. (*Id*. ¶ 45.)[11] Plaintiff became eligible to work overtime when she became a full-time employee in June of 2003. (*Id*. ¶ 46.) The overtime policy regarding "light duty" employees reduced her opportunities to work these extra hours, but two other employees also on "light duty" were not similarly affected. (*Id*.) Plaintiff complained to the union shop steward, who informed her that management had decided to place her name at the bottom of the overtime list. (*Id*.) Plaintiff and the union shop steward met with then-new Postmaster Michael Greb to discuss the overtime policy as it affected plaintiff. (*Id*. ¶ 47.)

As noted *supra*, the parties dispute when this meeting occurred; defendant represents, based on the recollection of Postmaster Greb, that it took place sometime "between October, November 2004," (Greb Dep. at 20), while plaintiff asserts, based on handwritten notes she allegedly took that day to memorialize the event, that it took place on January 11, 2006. (Grana Aff. ¶ 33, Ex. 13.) In

---

[10] Plaintiff disputes this paragraph insofar as it implies that "management does not interfere with the union in updating and running the overtime list." (Pl.'s 56.1 ¶ 44.)

[11] Again, plaintiff disputes that the union is solely responsible for this conduct. (Pl.'s 56.1 ¶ 45.)

any event, it is undisputed that, at the meeting, Greb informed plaintiff that "they would take care of it" and soon thereafter, her name was no longer placed at the bottom of the overtime list. (Def.'s 56.1 ¶ 47.) Further, Postmaster Greb and his supervisors held a round table discussion with union representatives, and the union agreed to end the practice of placing "light duty" employees at the bottom of the rotation for overtime hours. (*Id.* ¶ 48.) Thereafter, plaintiff was given overtime hours and had no further complaints about the amount of overtime she received. (*Id.* ¶ 49.)

## 1. Legal Standard

The ADA prohibits discrimination against "any qualified individual with a disability because of the disability of such individual in regard to [employment]." 42 U.S.C. § 12112(a). Claims of employment discrimination under the ADA are evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998). The Second Circuit has characterized the evidence necessary

for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y.*, *Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

## 2. Application

Defendant does not dispute that it is subject to the provisions of the ADA or that plaintiff suffers from a disability under that statute but is "otherwise qualified to perform the essential functions" of her job "with or without reasonable accommodation." Therefore, the Court proceeds to the final inquiry regarding whether she suffered an adverse employment action as a result of that disability. *See Shannon*, 332 F.3d at 99. Because issues of disputed facts bear on the resolution of this inquiry, the Court declines to conclude as a matter of law that plaintiff did not suffer an adverse employment action on account of her disability by way of the overtime policy. Here, plaintiff has put forth evidence that she lost numerous opportunities to work overtime hours on account of her disability which placed her on "light duty" status. The Court finds that this "lost opportunity" evidence satisfies a *prima facie* showing of adverse employment action. *See, e.g., Rothenberger v. New York City Police Dep't*, No. 06 Civ. 868 (NGG)(LB), 2008 WL 2435563, at *9 (E.D.N.Y. June 16, 2008) ("Denying an employee the opportunity to work overtime can constitute a materially adverse employment action."); *Gentile v. Potter*, 509 F. Supp. 2d 221, 241 (E.D.N.Y. 2007) ("denial of overtime is a materially adverse action"); *see also Rosario v. New York City Dep't of Homeless Serv.*, No. 06 Civ. 7197 (PAC)(GWG), 2008 WL 449675, at *6 (S.D.N.Y. Feb. 19, 2008) ("As for

Rosario's allegation that Stevens denied her the opportunity to work overtime on a project . . . denial of the opportunity to work overtime can be a materially adverse action.") (collecting cases). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for this policy. In its motion for summary judgment, defendant has offered no such evidence, arguing first that any claims related to this policy are time-barred and that, even if such claims are timely, they should be properly brought against the union rather than defendant, as it was the union that ran the allegedly discriminatory policy.

Because the parties dispute when the policy ended, as well as whether it was maintained by the union or defendant, the Court finds that disputed issues of material fact preclude summary judgment on plaintiff's disability discrimination claim arising from the alleged denial of overtime. Accordingly, defendant's motion on that claim is denied.

## C. Retaliation Claim

Plaintiff next brings claim that defendant took various adverse actions against her in retaliation for complaints she filed alleging discrimination with the EEOC, as well as requests she lodged for reasonable accommodation of her disability. Specifically, plaintiff asserts the following acts of retaliation:

At unspecified times, Tumminello gave plaintiff "preferential jobs, as opposed to other senior employees" and once instructed her to "go throw letters and piss them [referring to other senior employees] off." (First Compl. ¶¶ 42-44 (alteration in original).) "Throwing," or sorting letters, is a preferential assignment. (Grana Dep. at 307.) At an unspecified time in January of 2004, supervisor Tumminello refused to give plaintiff overtime. (First Compl. ¶ 47.) On February 6, 2004, supervisor DelPrete had an "official discussion" with plaintiff regarding a customer complaint lodged against her, (Def.'s 56.1 ¶ 31), but did not similarly address customer complaints lodged

against one of Grana's co-workers. (Grana Aff. ¶ 11.) The conversation did not result in any disciplinary action taken against plaintiff, but upset her. (Grana Dep. at 263-67.) On May 21, 2004, Tumminello gave plaintiff a job assignment five minutes before her scheduled lunch break while other idle employees were not asked to work. (Def.'s 56.1 ¶ 34.) Plaintiff alleges that this incident was indicative of a pattern wherein Tumminello "ma[de] sure that every second that [she was] in the Post office that [she was] busy working." (*Id*.) She further charges that he subjected her to heightened scrutiny and supervision. (*Id*.)

Plaintiff also claims that she was the victim of retaliation in early 2004 when she was ordered to work as a window clerk for hours that exceeded her medical limitations. The evidence related to this issue is as follows: On or about June of 2003, when plaintiff became a permanent employee, she was given the position of "window clerk," wherein her duties included selling stamps, handling mail and oversized packages, selling money orders and attending to customers. (*Id*. ¶ 6.) In an effort to accommodate plaintiff's disability while she attended to her duties as a window clerk, defendant provided her with a special chair and foot rest and adjusted the height of her counter so that she could comfortably position her chair and legs underneath it. (*Id*. ¶ 7.) When plaintiff returned from her knee replacement surgery at this time, defendant did not work eight hours at the window as did other window clerks, but only worked six hours pursuant to a note issued by her attending physician on November 13, 2003. (*Id*. ¶ 8; Def.'s Ex. G; Grana Aff. ¶ 13.) The note stated, in relevant part: "[Grana] is not able to stand for long periods of time, as it puts too much stress on her knees. Given her job description, it is not advisable that she stand any longer than 6 hours per day doing window work; 8 hours is too long." (Def.'s Ex. G.) From this letter, Postmaster Garofalo understood that plaintiff was capable of working "six hours standing" at the window. (Garofalo Dep. at 73.) Garofalo elaborated thus: "[t]he way I read the letter, it [wa]s not advisable

she stand any longer than six hours a day. Eight hours too long standing. That's the way I read it." (*Id*.) On January 8, 2004, Garofalo sought clarification of the physician's instructions by calling his office, wherein, based on his handwritten notes taken at the time of the telephone call, a secretary informed him that there was "no problem with sitting at window past six hours [sic]." (*Id*. at 75-82; Def.'s Ex. G.)[12]

Pursuant to Garofalo's instructions, plaintiff worked eight hour shifts at the window from January 21, 2004 until January 23, 2004. (Grana Aff., Ex. 2.) Plaintiff consulted with her physician regarding this modification of her work duties, who then stated in a letter dated January 26, 2004: "Having been given a detailed description from the patient, it is my opinion that *Ms. Grana can*

---

[12] Grana filed a grievance with her union based on the allegation that Postmaster Garofalo contacted her physician without her consent, a grievance which was settled by a March 12, 2004 letter stating that "Grana will be paid 4 hours work and 4 hours sick leave time [and] the grievance will not be pursued in any other form." (Def.'s 56.1 ¶ 15, n.3; Def.'s Ex. H.) Grana argues that she is not bound by this agreement. (Pl.'s Memorandum, at 10.) Defendant notes that Michelle Nadeau, the union official who represented Grana in that action, testified that once a grievance is filed, the union has the authority to resolve the dispute and that resolution is binding upon that employee with or without the employee's consent. (Nadeau Dep. at 33.) The Supreme Court has ruled than an employee's right to pursue a Title VII claim is not necessarily foreclosed if she "first pursues [her] grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974). However, "presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement . . . ." *Id*. at 52. In ruling on this issue, the trial court must determine whether the employee's waiver was "voluntary and knowing," *id*. at n.15, by considering the "totality of the circumstances." *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989), *cert. denied*, 493 U.S. 924 (1989). "Factors considered in this analysis include: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff has access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff consulted with or was represented by an attorney; and (6) how the consideration given compares with the amount of recovery otherwise sought." *Reidy v. Runyon*, 971 F. Supp. 760, 764, 766 (E.D.N.Y. 1997) (internal citation omitted) (ruling that court could not find upon motion for summary judgment that a settlement agreement did not preclude employee's Title VII action against defendant Post Office because, in addition to containing ambiguous language, the agreement did not bear plaintiff's signature, nor was there any "indication that [plaintiff] was (a) represented by counsel, (b) offered the opportunity to consult with an attorney, or (c) aware of the terms of the agreement."). The evidence submitted by both parties does not provide a complete picture of the circumstances leading up to the agreement entered into by the union and defendant, nor does the agreement bear the plaintiff's signature. Accordingly, there is insufficient evidence to conclude on summary judgment as a matter of law that plaintiff's claim regarding extended hours as a window clerk is barred by a previous settlement between the union and defendant.

*presently work only six hours a day at the window*.  Due to her present condition working any longer in her current capacity may limit her full recovery from the operation."  (Def.'s Ex. J (emphasis in original).)  Subsequently, Garofalo reduced plaintiff's window shift from eight to six hours.  (Def.'s 56.1 ¶ 16.)

Fifteen days later, on February 11, 2004, plaintiff's physician issued a third note stating: "Based on Ms. Grana's description of her work duties, I feel I must clarify my answers to the attached ["Medical Justifications for Light Duty"] form.  If her work entails more than 5 hours of work at the window, she should be moved to a more stationary job.  Therefore I allow her to work at the window for no more than 5 hours and any remaining time should be spent sitting and sorting mail.  Her condition allows her to work overtime and an extra work day during the week, but this time of work must be *stationary*, as in sitting and sorting mail."  (Def.'s Ex. K (emphasis in original).)  After receiving this letter, Garofalo reduced plaintiff's window shift so that she was working there from 12:30 p.m. to 5:30 p.m. daily.  (Grana Dep. at 205.)  In addition to the five hours, plaintiff also worked additional "close-out" minutes at the end of each work day, which took approximately ten to fifteen minutes daily, for which she did not require further accommodation.  (*Id*. at 209-10.)  Based on conversations with labor management, Garofalo understood that window time did not include this "close out" time, but reduced plaintiff's hours to five hours including "close out" time after she lodged a complaint about the extended minutes.  (Def.'s 56.1 ¶ 19.)  Plaintiff asserts that as a result of the extra physical stress she exerted during her extended window shifts, she suffered additional pain in her right leg as well as emotional distress. (Grana Dep. at 213-15.)

Finally, plaintiff alleges that defendant retaliated against her by instituting an allegedly discriminatory overtime policy, as detailed above, and failed to provide reasonable accommodations

during overtime hours worked, though she does not provide accompanying details regarding the final allegation.  (Second Compl. ¶¶ 35-36.)

### 1. Legal Standard

As in the case of discrimination claims, a claim of retaliation is analyzed under the three-step burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas*.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)); *Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.").  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of his activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action.  *Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006); *see also Treglia*, 313 F.3d at 719.  As stated above, the Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis."

Regarding the third prong of the retaliation inquiry, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence.  *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that a causal connection may be "established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus").  Where there is no direct

evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. Gen. Elec. Co., et al.*, 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)).

Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Further, as stated above, once a plaintiff has set forth a *prima facie* case, the burden shifts to defendants to show that they had a legitimate, non-discriminatory reason for the adverse employment action. *Sista*, 445 F.3d at 169. If such a showing is made, the burden shifts back to plaintiffs to prove that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

## 2. Application

Plaintiff argues that defendant supervisors retaliated against plaintiff for filing various EEOC complaints and requesting reasonable accommodations for her disability. Defendant does not contest that plaintiff participated in protected activity of which her supervisors were aware. Defendant argues, though, that any actions taken against plaintiff were not materially adverse as a matter of law and, therefore, summary judgment is warranted. Specifically, defendant notes, regarding plaintiff's window work claim, first, that plaintiff did not require any accommodation to work the additional fifteen to thirty minutes of "close out" time above her physician-mandated five hour window shift and, second, she was able to sit at the window for the eight hours she worked there on January 20-22, 2004, so long as she stood periodically. (Def.'s 56.1 ¶¶ 14, 19.) Thus, according to defendant, the burden of extra window work was "trivial and innocuous." Defendant also contends that the decision to assign those extra hours to plaintiff was supported by a legitimate, non-discriminatory reason, as Postmaster Garofalo was under the impression that plaintiff's doctor's note permitted her to work the assigned schedule.

Defendant argues that plaintiff's remaining allegations of retaliation – *i.e.*, heightened scrutiny, inequitable distribution of available work assignments and receipt of preferable task, one instance of denial of overtime in January of 2004 – do not constitute adverse employment actions as a matter of law and that plaintiff has failed to link them to any retaliatory intent. Finally, defendant notes that plaintiff concedes that, while working overtime hours, she was assigned tasks within her physical restrictions and had no complaints related to accommodations made for her during that time. (Grana Dep. at 227-28.)

As to plaintiff's claim regarding the alleged retaliatory assignment of excessive window work hours and the alleged denial of overtime work in January of 2004, the Court finds that disputes of material fact preclude a determination that these acts did not constitute improper retaliation. As a threshold matter, regarding the window work claim, whether working hours in excess of her physician's orders affected plaintiff in a materially adverse manner is a question properly left to the trier of fact under the circumstances of this case. The Court is unable to conclude as a matter of law that the alleged pain and discomfort caused by this additional work, if it is proven to be retaliatory, is too trivial to constitute an adverse employment action. Moreover, the factual disputes regarding the circumstances that led to that additional work, as well as the disputes surrounding supervisor Tumminello's interpretation of plaintiff's medical notes, preclude summary judgment on this issue. Viewing the evidence in the light most favorable to plaintiff, including drawing all reasonable inferences in her favor, summary judgment on this issue is unwarranted. Similarly, with respect to the overtime policy, the factual disputes discussed *supra* also preclude a finding that the policy did not constitute improper retaliation as a matter of law. As to the "causally connected" prong of the retaliation inquiry, the Court notes that plaintiff first initiated contact with an EEOC counselor regarding alleged acts of discrimination on January 26, 2004, prior to the majority of the timely acts

of retaliation alleged in her consolidated complaint. Moreover, she had requested a workstation and work assignments amenable to her physical limitations prior to retaliatory acts she alleged took place in January of 2004 and produced a note from her physician requesting such on November 13, 2003. Viewing these facts in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, the Court declines to rule that no reasonable jury could determine that plaintiff's protected activity and these ensuing acts of alleged discrimination were not causally connected.

Similarly, with respect to plaintiff's other alleged acts of retaliation – including the denial of training in May 2004, the denial of overtime, the denial of preferable work assignments, and increased scrutiny – the Court is unable to conclude as matter of law, given the disputed facts and evidence in the entire record, that a reasonable juror could not conclude that such acts did not constitute an adverse employment action under the circumstances of this case. Employment actions that the Second Circuit has deemed sufficiently disadvantageous to constitute an adverse employment action include "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams*, 368 F.3d at 128) (internal quotation marks omitted). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); *see also Newmark v. Lawrence Hosp. Ctr.*, No. 07 Civ. 2861 (CS), 2008 WL 5054731, at *5 (S.D.N.Y. Oct.

20, 2008) ("the denial of training can constitute an adverse employment action where it bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation") (quotations and citations omitted); *Fahmy v. Duane Reade, Inc.*, No. 04 Civ. 1798 (DLC), 2006 U.S. Dist. LEXIS 37703, at *33 (S.D.N.Y. June 12, 2006) ("There is no dispute that . . . the transfer to difficult stores constitute[s] adverse employment action[.]"); *Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) ("The three remaining adverse actions alleged by plaintiff – deprivation of training, treatment of leave hours and assignment of menial 'make-work' tasks – appear to bear on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation. Accordingly, . . . I conclude that a jury could reasonably conclude that these events were adverse employment actions."); *Neratko v. Frank*, 31 F. Supp. 2d 270, 283 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action."). The Second Circuit has held, for example, that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004). Similarly, "[c]omparatively poor assignments can constitute adverse employment actions." *Wright v. N.Y. City Off-Track Betting Corp.*, No. 05 Civ. 9790, 2008 U.S. Dist. LEXIS 22567, at *10 (S.D.N.Y. Mar. 24, 2008) (collecting cases). Finally, with respect to heightened scrutiny by an employer, it is well-settled that "[t]o qualify as an adverse employment action, excessive scrutiny must be accompanied by unfavorable consequences." *Scafidi v. Baldwin Union Free School Dist.*, 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003); *see also Hubbard v. Port. Auth. of New York and New Jersey*, No. 05 Civ. 4396 (PAC), 2008 WL 464694, at *12 (S.D.N.Y. Feb. 20, 2008) (stating that "courts in this circuit have found that reprimands and . . . excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such

as a decrease in pay or being placed on probation") (internal quotation marks and citations omitted); *Castro v. New York City Bd. of Educ. Personnel*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, *7 (S.D.N.Y. Mar. 12, 1998) (stating that "although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions").

In her affidavit, plaintiff asserts that she was given a heavy workload in retaliation and that the other acts – including denial of training and favorable work assignments, as well as excessive scrutiny – substantially impacted her ability to, among other things, perform her job in an effective manner, advance her career within the Post Office, and obtain overtime. Given the evidence, and disputes surrounding such evidence, the Court cannot conclude as a matter of law that a reasonable juror could not conclude that such acts were adverse actions and would dissuade a reasonable employee from making or supporting a charge of discrimination. Moreover, as to the fourth element of causal connection, the temporal proximity of the alleged act to the protected activity combined with the other evidence in the record, when viewed in the light most favorable to plaintiff, are sufficient to support a finding that the adverse employment action occurred under circumstances that would support an inference of discrimination and, thus, survives summary judgment.[13]

Accordingly, the defendant's motion for summary judgment on the retaliation claim is denied.

---

[13] To the extent that plaintiff also claims that the defendant retaliated against her by failing to provide her with a reasonable accommodation during overtime hours, any claim based upon that alleged conduct cannot survive summary judgment. In her deposition, plaintiff was asked whether she had any complaints about the accommodations provided to her during overtime work and she responded that she did not. (*See* Grana Dep. at 228 ("Q. Do you have any complaint about the accommodations provided to you when you work overtime? A. No.").) As plaintiff stated that she was assigned tasks within her physical limitations during overtime and had no complaints regarding them, she fails to establish a *prima facie* case that defendant retaliated against her by denying her reasonable accommodations during overtime work.

### D. Failure to Accommodate Claim

Plaintiff alleges that defendant failed to honor requests for reasonable accommodation of her disability by forcing her to work extra hours at the window. As set forth below, given the disputed issues of fact in the record, summary judgment on this claim is unwarranted.[14]

#### 1. Legal Standard

As the Second Circuit has noted, "[d]iscrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* case for failure to accommodate under the ADA, an employee has the burden to demonstrate that: "1) he was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to demonstrate that the . . . proposed accommodation would have resulted in undue hardship." *Id.*

---

[14] Plaintiff also claims that defendant failed to reasonably accommodate her disability during overtime hours worked. However, as noted *supra* (at footnote 13), plaintiff has not put forth any evidence to support such a claim and confirmed at her deposition that there was no failure to accommodate her disability while she was working overtime. Therefore, because plaintiff has failed to demonstrate a *prima facie* case related to that alleged conduct, any failure to accommodate claim based upon alleged conduct during overtime work does not survive summary judgment.

## 2. Application

Plaintiff alleges defendant failed to provide reasonable accommodations when supervisor Tumminello ordered her to work window hours in excess of the amount specified by her physician. For the purposes of this motion, defendant does not dispute that plaintiff suffered from a disability of which her employer had notice, but could perform her essential job tasks with reasonable accommodation. Defendant argues, however, that any alleged denial of a reasonable accommodation does not constitute employment discrimination because these extra hours were not materially adverse and were supported by a legitimate, non-discriminatory reason. Regarding the allegedly discriminatory overtime policy, defendant argues that even if the claim is not time-barred, any improper behavior is attributable to the union and not to defendant. As stated *supra*, the Court has determined that there are disputed issues of fact regarding both issues. Thus, defendant's motion for summary judgment on plaintiff's claim for failure to accommodate is denied.

## E. Disparate Impact Claim

Finally, plaintiff alleges that defendant's alleged discriminatory overtime policy, by disfavoring those employees on "light duty," had a disparate impact on her, as a disabled person. As set forth below, summary judgment on this claim is unwarranted.

## 1. Legal Standard

Discrimination against a disabled individual can manifest through acts of intentional discrimination, an employer's failure to make a reasonable accommodation of the individual's disability or a showing of disparate impact. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). In order to establish disparate impact, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices."

*Id.* at 575. "The basis for a successful disparate impact claim involves a comparison between those groups who are adversely affected by a practice because of their disability, and those unaffected by it." *Reid v. Zackenbaum*, No. 05 Civ. 1569, 2005 WL 1993394, at *3 (E.D.N.Y. Aug. 17, 2005) (citing *Tsombanidis*, 352 F.3d at 575). The plaintiff is not required to demonstrate that the defendant's action was motivated by discriminatory intent, *see Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-36 (2d Cir. 1988), but "[w]hen establishing that a challenged practice has a significantly adverse or disproportionate impact on a protected group, a plaintiff must prove the practice 'actually or predictably results . . . in discrimination.'" *Tsombanidis*, 352 F.3d at 575 (quoting *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 90 (2d Cir. 2000)). The mere inference of discriminatory intent does not satisfy this burden. *See id.* Further, the plaintiff must demonstrate that the facially neutral policy and the alleged discriminatory result are causally connected. *See id.*; *Hack*, 237 F.3d at 90-91. Once the plaintiff has made this *prima facie* showing, the burden then shifts to the defendant to "prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *Tsombanidis*, 352 F.3d at 575 (quoting *Town of Huntington*, 844 F.2d at 936)).

## 2. Application

Defendant reiterates its arguments that (1) any claims arising from the overtime policy are untimely, and (2) even if they are not untimely, they arise from discriminatory acts perpetrated by the union, not defendant. As discussed *supra*, given the disputed facts, the Court cannot conclude as a matter of law that the claim regarding the overtime policy is untimely or that the union was solely responsible for any alleged conduct. In short, viewing the evidence in the light most favorable to plaintiff, because the policy in question targeted "light duty" employees, or those unable

to perform certain physical tasks, a reasonable jury could conclude that it had a predictably disproportionate effect on the physically disabled. Moreover, at this stage in the proceedings, defendant has made no showing of how this policy met any governmental need. Therefore, given the record in this case, summary judgment dismissing plaintiff's disparate impact claim is inappropriate at this juncture.

### F. Hostile Work Environment Claim

Defendant also seeks summary judgment on plaintiff's hostile work environment claim under Title VII. As noted *supra*, plaintiff's opposition papers did not address defendant's motion for summary judgment on this claim and, instead, withdrew the claim and confirmed such withdrawal at oral argument. However, plaintiff's counsel then sent a letter to the Court asking to re-instate that claim, with no explanation as to why the Court should grant such relief. Moreover, in this conclusory request to re-instate this claim, plaintiff's counsel provided no additional briefing on that claim, but rather simply stated that "[p]laintiff's opposition papers fully set forth all the allegations which sufficiently provide all facts to support her claims of hostile work environment," (Plaintiff's Counsel's Letter, dated December 5, 2008, at 1), even though plaintiff's opposition contained no factual or legal discussion of the hostile work environment claim because it was withdrawn. Under such circumstances, the Court continues to view this claim, despite counsel's request, to be abandoned and/or withdrawn, and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim) (citing *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)); *see also DeVito v. Barrant*, No. 03 Civ. 1927 (DLI)(RLM), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of N.Y.*,

269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00 Civ. 9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

Nevertheless, in an abundance of caution, the Court proceeds to consider the substance of plaintiff's hostile work environment claim, and finds it to be without merit. A hostile work environment, in violation of Title VII, is established by a plaintiff showing that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998); *see Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004); *see also Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Richardson v. N.Y. Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds by Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

Plaintiff's hostile work environment claim cannot survive summary judgment, as the Court concludes as a matter of law that plaintiff has failed to show that her workplace was "permeated"

with discriminatory intimidation that altered the conditions of her employment. *Howley*, 217 F.3d at 153. The Second Circuit has held that there is no "magic" threshold number of harassing incidents that are required, as a matter of law, to state a claim. *See Richardson*, 180 F.3d at 439. Rather, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (quoting *Harris*, 510 U.S. at 23). The Court concludes, as a matter of law, that the alleged discriminatory conduct by defendant fails to rise to the severe level required to support a claim of hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" are not discriminatory changes in the "terms and conditions of employment"); *Brennan v. Met. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or occasional episodes do not warrant relief"); *Williams v. Cty. of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that to meet his burden, the plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice); *Knight v. City of N.Y.*, 303 F. Supp. 2d 485, 500 (S.D.N.Y. 2004); *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 217-18 (E.D.N.Y. 2001) (holding that a "collection of administrative mixups, minor annoyances, and perceived slights cannot be considered severe or pervasive harassment"); *Francis v. Chem. Bank. Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (dismissing hostile work environment claim where plaintiff only alleged four incidents).

Because plaintiff did not brief this issue at all, it is not entirely clear which evidence plaintiff argues would support this independent claim. It appears that, even apart from the alleged discrete acts (denial of training, denial of overtime, etc.) that are the basis for the retaliation claim, plaintiff

asserts that she was subject to ridicule and offensive comments that created a hostile work environment. In particular, in her EEOC Complaint and in her deposition, plaintiff referred to approximately four incidents involving actions/comments by co-workers and several actions/comments involving supervisors. However, most of these alleged incidents have absolutely no linkage whatsoever to disability. For example, plaintiff complains about, among other things, the following: (1) on April 15, 2000, several workers joked in an unspecified way about plaintiff's personal life (Def's 56.1 ¶ 21); (2) on March 12, 2003, her battery charger, time card, and coffee cup were missing (*id*. ¶ 24); (3) on April 23, 2002, the Postmaster sent plaintiff home because she wore improper shoes (*id*. ¶ 25); and (4) on one occasion, Postmaster Garofalo refused to give plaintiff a copy of her pay record. (*Id*. ¶ 26.) There is no evidence linking these types of incidents to plaintiff's disability. Moreover, even if all of the alleged incidents were linked to disability, the Court finds that the alleged incidents, which occurred over a period of approximately four years, are at best "episodic," and are not "sufficiently continuous and concerted in order to be deemed pervasive," and, therefore, plaintiff's hostile work environment claim cannot survive summary judgment. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. N.Y. City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *see, e.g., Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (noting that "[i]solated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment") (citation omitted); *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding the alleged conduct non-actionable when the incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment"); *Shannon v. Verizon New York, Inc.*, No. 1:05 Civ. 0555 (LEK/DRH), 2007 WL 1135307, at *6 (N.D.N.Y. Apr. 13, 2007) ("Plaintiff's allegations that co-workers spoke rudely to him and made snide comments, that certain other employees spoke to him in a degrading fashion . . . do not have the severity or

pervasiveness to meet the standard of a hostile work environment.  Further, . . . none of the other comments are connected with Plaintiff's claimed disability."); *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a "bitch" and making sexual remarks over the course of her five and one-half years of employment insufficient to support a claim of discriminatory harassment); *Augustin v. Yale Club of N.Y.C.*, No. 03 Civ. 1924 (KMK), 2006 WL 2690289, at *22 (S.D.N.Y. Sept. 15, 2006) (finding that "four or five" comments over a five-year period insufficient to support a hostile work environment claim); *Mark v. Brookdale Univ. Hosp.*, No. 04 Civ. 2497 (JBW), 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) (finding two "alleged isolated remarks" by plaintiff's supervisor insufficiently "frequent and pervasive"); *Pagan v. N.Y.S. Div. of Parole*, No. 98 Civ. 5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18 2003) (finding that two racially derogatory remarks by supervisor directly to plaintiff did "not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII") (citations omitted); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 533 (S.D.N.Y. 2002) (finding single remark by supervisor insufficient); *Upshur v. Dam*, No. 00 Civ. 2061 (DC), 2003 WL 135819, at *7-*8 (S.D.N.Y.  Jan. 17, 2003) (finding one week of "patronizing and racist comments" by supervisor insufficient); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's use of racially derogatory slur to refer to defendant on four or more occasions does not alter conditions of employment significantly enough to implicate Title VII).

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part.  Specifically, the Court denies the motion with respect to the following: (1) a claim of disability discrimination based upon the alleged deprivation of overtime opportunities up

to January 2006, arising from an alleged overtime policy that discriminated against her based on disability; (2) a claim of failure to provide a reasonable accommodation in January and February 2004 in connection with hours plaintiff was directed to work as a window clerk, allegedly beyond her medical limitations; (3) a claim of retaliation following her protected activity in January 2004, with such retaliation allegedly including being ordered to work beyond her medical restrictions in early 2004, the denial of training in May 2004, the denial of overtime, the denial of preferable work assignments, and increased scrutiny; and (4) a claim of disparate impact based on defendant's alleged discriminatory overtime policy. Defendant's motion for summary judgment is granted with respect to all other claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:        February 19, 2009
              Central Islip, NY

The attorney for plaintiff is James E. Bahamonde, P.C., 2501 Jody Court, North Bellmore, New York, 11710. The attorney for defendant is Vincent Lipari, United States Attorneys' Office, Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, New York, 11722.